UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIZABETH TIPTON,

        Plaintiff,

v.                            CASE No. 8:09-CV-1990-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

The plaintiff, who was thirty-two years old at the time of the administrative hearing and who has some college education, has worked as

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

a telemarketer, security officer, food server, and factory worker (Tr. 65, 104, 458). At the time of the hearing, she was attending a college class four days a week (Tr. 472-73). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on May 20, 2003, due to a back injury (Tr. 85). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge, at which time she amended her disability onset date to January 1, 2005 (Tr. 456-57). The law judge found that the plaintiff had severe impairments of L4-L5 disc bulge with displacement of L4 nerve root, and L5-S1 mild disc bulge without radiculopathy (Tr. 29). The law judge concluded that, with these impairments, the plaintiff can perform light work with a restriction of no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 30). Additionally, the law judge determined that the plaintiff should avoid hazardous machinery and unprotected heights (id.). He decided that these limitations did not prevent the plaintiff from returning to prior employment as a telemarketer or security officer (Tr. 33). Alternatively, the law judge found, based upon the medical-

vocational guidelines, that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform (Tr. 34). The law judge therefore ruled that the plaintiff was not disabled (id.). The Appeals Council, after considering additional evidence submitted by the plaintiff, let the decision of the law judge stand as the final decision of the Commissioner (Tr. 5-8).

II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act. is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant

is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to

-5-

whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

## III.

The plaintiff contends that she is unable to work due to disabling back and leg pain (Tr. 103, 470). The plaintiff asserted initially that she became disabled on May 20, 2003 (Tr. 103), when she injured her back lifting a heavy bin at work (see Tr. 133, 203). At the administrative hearing, the plaintiff amended her disability onset date to January 1, 2005, because she had engaged in substantial gainful activity in 2004 (Tr. 456-57).

-6-

There was a dearth of medical records before the law judge concerning the period following the amended disability onset date. Further, although additional medical records were submitted to, and considered by, the Appeals Council, it found that the additional information did not provide a basis for changing the administrative law judge's decision (see Tr. 5-9). The plaintiff has not made any argument pursuant to Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007), contending that the Appeals Council erred in concluding that the law judge's findings are not contrary to the weight of all the evidence. See Tucker v. Astrue, 2008 WL 2811170 (M.D. Fla. 2008). Rather, the plaintiff challenges solely the law judge's decision. Therefore, only the evidence that was before the law judge is to be considered. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); see also Ingram v. Commissioner of Social Security Administration, supra, 496 F.3d at 1266.

A. The plaintiff contends first that the law judge did not apply the Eleventh Circuit's pain standard in evaluating the credibility of her testimony that "her [back] impairments cause her pain and spasms that require

-7-

her to nap and elevate her legs" (Doc. 20, pp. 8-9). This argument is meritless.

The plaintiff testified at the hearing that she cannot work due to pain in her back and legs (Tr. 470). She stated that she can walk only a few feet without back pain, her legs swell if she stands for more than 30 minutes, and that she cannot lift more than ten pounds (Tr. 478-80). The plaintiff testified that, in order to alleviate the pain, she elevates her legs twice a day for two hours at a time and naps during the day (Tr. 472, 477). The law judge acknowledged the plaintiff's testimony in his decision (Tr. 31), but did not find it fully credible (Tr. 32).

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively

determined medical condition which could reasonably be expected to produce disabling pain. the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The plaintiff frivolously asserts that "[i]n the instant case, there is no indication that the three-part pain standard was applied or considered" (Doc. 20. p. 6). To the contrary. the law judge's decision. citing Landry, articulates the Eleventh Circuit pain standard, as well as the pertinent regulations and Social Security Rulings governing the assessment of subjective complaints of pain (Tr. 30). See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Further, the law judge appropriately applied that standard, as demonstrated by his conclusion that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms. but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 32).

The law judge, moreover, explained the reasons for this credibility determination. Thus, after discussing in detail medical evidence

that was inconsistent with the plaintiff's allegations of disabling pain and functional limitations (Tr. 32-33), the law judge stated (Tr. 33):

> [W]hile the claimant did sustain an injury to her lumbar spine in May 2003, she continued working and performing substantial gainful activity through the end of 2004. In addition, the progress notes fail [t]o document any functional limitations. The claimant has multiple pain complaints in the setting of objectively benign physical[] exams and diagnostic testing [which] is consistent with severe symptom exaggeration. If the claimant's pain complaints were as severe as she alleged, she would have followed through with the treatment modalities offered by Dr. [Manjul D.] De[ra]sari in Exhibit 7F. The claimant is capable of full time work activity within certain limitations. While her medical conditions could give rise to pain, the evidence and her testimony fail to establish pain of such persistence and severity to preclude all gainful employment.

This credibility determination is supported by substantial evidence. For example, the law judge noted that Dr. Raul F. Nodal's consultative examination of the plaintiff was essentially normal (Tr. 33). Moreover, the law judge noted that, with the exception of Dr. Jeffrey L. Tedder (whose conclusory opinion of disability the law judge discounted), all

of the treating. examining, and reviewing medical physicians opined that the plaintiff could perform light or full duty work (see Tr. 32-33).

The law judge, additionally, identified in the decision the plaintiff's rejection of treatment options, including conservative ones, such as prescription pain medication (id.). The law judge could reasonably conclude that the plaintiff's rejection of treatment is inconsistent with her testimony of disabling pain. In sum, the law judge provided adequate reasons for his credibility determination, and those reasons are supported by substantial evidence. Therefore. this court is not authorized to second guess that determination. See Celebrezze v. O'Brient. supra.

The plaintiff contends in a conclusory manner that "the MRI results [which] showed canal and neural foraminal stenosis with displacement of the L4 nerve root .... particularly the nerve root displacement, indicate Plaintiff's impairment was of such a severity that it could reasonably be expected to cause the alleged pain" (Doc. 20, p. 9). However, these diagnoses, in themselves, do not compel the conclusion that the plaintiff's testimony of disabling pain is credible, or even that she has greater functional limitations than found by the law judge. Thus, "a diagnosis or a mere

-11-

showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[er] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684 (11th Cir. 2005)(unpub. dec.)(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)); see also Davis v. Barnhart, 153 Fed. Appx. 569, 572 (11th Cir. 2005)(unpub. dec.).

Furthermore, it would not be enough for the plaintiff to show that the MRI results support the plaintiff's allegations of disabling pain; the plaintiff, rather, must establish that the evidence compels a finding of disabling pain. Adefemi v. Ashcroft, supra. In light of the opinions of several treating, examining, and reviewing physicians who, after considering the MRI results, opined that the plaintiff could perform full or light duty work, the plaintiff cannot meet this standard.

For example, Dr. Roberto Dominguez, the plaintiff's former treating physician, reviewed these MRI films (Tr. 201) and opined that, after a period of several months of restricted work activity, the plaintiff could return to "full-duty work with no restriction" (Tr. 198). Similarly, another former treating physician, Dr. Derasari, opined after reviewing this MRI that

-12-

the plaintiff could perform modified light duty work (Tr. 216). Moreover, neurologist Dr. Nodal, who performed a consultative examination of the plaintiff and reviewed the MRI reports (Tr. 259), opined that the plaintiff's functioning was not limited by her impairments (Tr. 265-67). Therefore, the plaintiff's reference to the 2004 MRI results clearly does not compel the law judge to accept as credible the plaintiff's allegations of disabling functional limitations.

The plaintiff argues further that the law judge improperly relied on medical assessments prior to the amended disability onset date of January 1, 2005, to discredit the plaintiff's pain complaints (Doc. 20, pp. 9-10). However, the law judge supported his credibility finding with medical records both prior to, and after, the amended onset date (see Tr. 32-33). Furthermore, consideration of medical records prior to the amended onset date is appropriate in this case because the injury underlying the disability claim occurred in May 2003, and the diagnostic medical evidence before the law judge precedes the amended disability onset date. Significantly, the plaintiff has not shown an exacerbation of her impairments that renders these records irrelevant. To the contrary, the plaintiff relies upon the results of a 2004 MRI

-13-

disability (see Doc. 20, p. 9). Therefore, it is anomalous to argue that the law judge could not consider the physician's assessments of her functioning when evaluating the MRI results.[2]

Next, the plaintiff argues unpersuasively that the law judge's finding that she "had benign physical exams and engaged in symptoms exaggeration is not supported by the record" (id., p. 10). To the contrary, Dr. Nodal observed that the plaintiff had a physicologic gait; normal neurological, sensory and motor examinations; and normal range of motion (Tr. 260-64). Additionally, Dr. Tedder observed normal flexion and negative straight leg raises, and noted the absence of gross lower extremity radiculopathy (Tr. 243). Pre-amended disability onset date examinations similarly include multiple benign findings (see, e.g., Tr. 197). Moreover, Dr. Nodal's suspicion that the plaintiff's back pain had a "psychogenic component" (Tr. 261) indicates a lack of objective medical evidence to support the plaintiff's testimony of disabling pain and functional limitations.

---

[2]Furthermore, it is noted that, overall, the pre-and post-amended onset date medical records are consistent. Thus, they similarly note complaints of back pain and spasms, and include findings of back tenderness and tautness unaccompanied by debilitating functional limitations (compare, e.g., Tr. 204 with Tr. 243). Consequently, there is no reason to think that the law judge's conclusions would have been different if those records had not been considered.

-14-

The law judge also found. as indicated, that the plaintiff's refusal of treatment recommended by treating physicians undermines her claims of disabling pain (see Tr. 32, 33). In summary, the disparity between the claimed severity of the plaintiff's symptoms and the objective medical evidence of impairment, coupled with the plaintiff's rejection of treatment, constitute substantial evidence supporting the law judge's finding that the plaintiff exaggerated her symptoms.

Notably, the law judge did not totally reject the plaintiff's allegations of pain. Rather, he found that the plaintiff has severe lumbar impairments that cause her pain and limit her to a reduced range of light work. However, he rejected the allegations that she suffers totally debilitating pain and limitations. This determination, which is in accord with the Eleventh Circuit's pain standard, is reasonable and supported by substantial evidence.

B. Next, the plaintiff argues that the law judge "improperly rejected the treating source opinion" of Dr. Tedder (Doc. 20, p. 10). Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v.

-15-

Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The record before the law judge indicates that the plaintiff was treated by Dr. Tedder, an orthopedic physician, on May 12, 2006, and July 31, 2006 (Tr. 239-44). Dr. Tedder's signature appears on a prescription pad paper dated July 20, 2006, on which is written, "Due to multiple orthopedic injuries patient has been unable to work for the past 12 months" (Tr. 226).

The law judge acknowledged in his decision Dr. Tedder's opinion, and explained that he gave Dr. Tedder's opinion little weight (Tr. 33). Thus, the law judge stated (id.):

> On July 20, 2006, Dr. Tedder opined that claimant had been unable to work for the past 12 months, and this opinion has been afforded little weight (Exhibit 9F). Dr. Tedder examined the claimant on two occasions, May 12 and July 31, 2006, and the statement that she was unable to work was not accompanied by an objective evaluation or examination report or by objective findings that would support this opinion. This physician's

-16-

> medical opinion, while that of an acceptable
> medical source, is inconsistent with other
> substantial evidence in the file. Generally, greater
> weight is given to a medical opinion when it is
> consistent with the record as a whole.

The law judge's explanation provides good cause for rejecting Dr. Tedder's opinion.

Significantly, Dr. Tedder's opinion is not entitled to the weight afforded a treating physician's opinion. As the Commissioner points out, a treating source is a physician who has "an ongoing treatment relationship" with a plaintiff. 20 C.F.R. 404.1502, 416.902. Thus, a treating physician's opinion is more probative, and therefore is entitled to greater weight, because the treating physician has a "detailed, longitudinal picture of [the plaintiff's] medical impairment[s]." 20 C.F.R. 404.1527(d)(2), 416.927(d)(2). Accordingly, a medical opinion offered by a physician after examining the plaintiff on just one occasion is not entitled to the weight of a treating physician. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

The records before the law judge reflect that Dr. Tedder saw the plaintiff on two occasions, and that he had examined her only once before

-17-

opining that the plaintiff "has been unable to work for the past 12 months" (Tr. 226).[3] Moreover, not only is Dr. Tedder's opinion unsupported by a "detailed, longitudinal picture of [the plaintiff's] medical impairment[s]," it opines on the plaintiff's vocational capability for a period of ten months before he even met the plaintiff, thereby further reducing its probative value.

In all events, the law judge had ample basis to discount Dr. Tedder's opinion. In the first place, the conclusory nature of Dr. Tedder's opinion is enough, by itself, to justify the law judge to discount it. Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007). Thus, Dr. Tedder does not identify the "multiple orthopedic injuries" or functional limitations underlying his opinion, much less provide any meaningful explanation for the opinion that the plaintiff was unable to work for 12 months. Furthermore, Dr. Tedder's opinion that the plaintiff was "unable to work" is not even a medical opinion, but rather an opinion on a vocational issue reserved to the

_____

[3]The plaintiff argues that "subsequent records submitted to the Appeals Council demonstrate Dr. Tedder is plaintiff's treating physician" (Doc. 20, p. 16). As discussed earlier, only evidence before the law judge is properly considered in deciding a challenge to the law judge's decision. Regardless, the records submitted to the Appeals Council do not show that the plaintiff had seen Dr. Tedder more than once before Dr. Tedder opined that she had been unable to work for 12 months.

-18-

Commissioner. 20 C.F.R. 404.1527(e)(1), 416.927(e)(1); 404.1527(e)(3), 416.927(e)(3).

Moreover, there is substantial evidence supporting the law judge's findings that Dr. Tedder's opinion is not supported by Dr. Tedder's treatment records, and is inconsistent with other substantial evidence in the file (Tr. 32-33). Thus, as the law judge discussed in his decision, Dr. Tedder's medical records do not reflect disabling impairments or functional limitations (id.: see Tr. 239-44). The law judge's finding that Dr. Tedder's opinion of total disability is inconsistent with other substantial evidence in the record is demonstrated by the fact none of the other physicians to examine the plaintiff or review her records opined that the plaintiff was disabled or set forth any disabling functional limitations.

The plaintiff complains further that the law judge improperly gave weight to medical assessments made by physicians before the amended onset date (Doc. 20, p. 15). Although, as previously explained, there was nothing inappropriate in doing that, the law judge also stated that "[s]ubstantial weight is ... assigned to ... [the opinion of Dr. Nodal] the consulting examiner's opinion in Exhibit 12F. This physical examination was

essentially benign" (Tr. 33). Dr. Nodal examined the plaintiff in 2006, more than one year after the amended disability onset date, and opined after conducting a comprehensive physical examination and reviewing medical records that the plaintiff's impairments do not cause her any exertional, postural, or environmental limitations (Tr. 265-67). Therefore, the plaintiff's residual functional capacity found by the law judge (which is significantly more restrictive than that opined by Dr. Nodal), is supported by the opinion of a consulting examiner given after the amended disability onset date.

The plaintiff also seems to complain that the law judge should have given more consideration to the records of Dr. Shawn Edwards, a chiropractor (Doc. 20, pp. 15-16). The law judge referred to Dr. Edwards's records in his decision (Tr. 32). However, he was not required to give them any significant weight. As a chiropractor, Dr. Edwards is not considered an "acceptable source" and, thus, his opinion cannot establish the existence of an impairment. See 20 C.F.R. 404.1513(a), 416.913(a) (excluding chiropractors from the list of "acceptable medical sources" whose opinions may be considered in determining the existence of an impairment); Falge v.

Apfel, supra, 150 F.3d at 1324. Furthermore, Dr. Edwards does not opine that the plaintiff has disabling functional limitations (see Tr. 245-58).

In sum, the law judge reasonably explained why he discounted Dr. Tedder's conclusory opinion. In other words, he stated good cause for that determination. The plaintiff clearly has not pointed to evidence that compels a contrary conclusion. See Adefemi v. Ashcroft, supra.

C.   The plaintiff next reiterates her contention that the law judge's decision is not supported by substantial evidence because it relies upon medical evidence of her condition prior to her amended disability onset date (Doc. 20, p. 16). The plaintiff has not cited any legal authority supporting this proposition. Moreover, this contention is meritless as a matter of fact because, as previously explained, the law judge's decision is based upon medical evidence generated after the amended disability onset date, and the medical records predating the plaintiff's amended disability onset date are relevant to the plaintiff's disability claims.

D.   Next, the plaintiff argues that the law judge's determination that she could return to past work as a telemarketer or security officer is not supported by substantial evidence because the law judge did not "obtain

-21-

detailed descriptions of Plaintiff's past relevant work" (Doc. 20, p. 17). The plaintiff testified at the hearing that she worked as a telemarketer (Tr. 465). In this regard, the plaintiff stated that she worked at a customer service facility selling life and health insurance (id.). The plaintiff also testified that she had worked as a security officer (Tr. 468-69). She said that one security job involved sitting at a desk and periodically patrolling a cigar warehouse (id.).

Based on the plaintiff's testimony, the law judge found that the plaintiff could return to prior work as a telemarketer or security officer (Tr. 33). The Commissioner points to the Dictionary of Occupational Titles to support this finding, but that reference seems superfluous (Doc. 21-1, p. 2)(security guard); (Doc. 21-2, p. 4)(telemarketing). The plaintiff's testimony establishes that, with her residual functional capacity, she could perform either job.

There is no reason to think that the job of telemarketer involves anything more than the name indicates. An individual sits at a desk and makes telephone calls in an effort to sell a product or service. Previously, the

plaintiff was "trying to have people to switch the insurance, get quotes for life insurance and health insurance" (Tr. 465).

The plaintiff, as indicated, described her security officer position as sitting at a desk, and, after the employees left, locking the building and patrolling the warehouse to "make sure none of the cigars were walking out of the facility by themselves" (Tr. 469). Obviously, the plaintiff's need to patrol the building was minimal. The plaintiff's description of the job was adequate to demonstrate how she actually performed it.

In light of the plaintiff's testimony, the law judge could reasonably conclude that the plaintiff could return to past work as a telemarketer or security officer. Of course, if the plaintiff is able to perform either of those two jobs, her claims fail.

Importantly, the plaintiff bears the burden of proving that she can no longer perform her past relevant work. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). At the administrative hearing, plaintiff's counsel could have attempted to carry this burden by inquiring about the plaintiff's ability to perform her past work or otherwise eliciting additional information regarding the job requirements. Counsel did not do so.

-23-

Furthermore, the plaintiff does not even identify in her memorandum any job requirement of her past telemarketing or security officer work that is precluded by the residual functional capacity. Consequently, not only is this argument properly disregarded for failure to develop it (see Doc. 11), there is no basis for concluding that the evidence compels a finding that the plaintiff could not return to past work. Accordingly, this argument is rejected.

E. The plaintiff's final argument is that the law judge improperly relied upon the medical-vocational guidelines (Doc. 20, pp. 17-19). After concluding that the plaintiff could perform prior work, the law judge alternatively found, based upon the guidelines, that there were other jobs in significant numbers in the national economy that the plaintiff could perform (Tr. 34). The plaintiff argues that the law judge erred because she has non-exertional limitations which preclude use of the guidelines. Since the law judge found that the plaintiff could return to past work, this argument is moot under the sequential analysis.

It is, therefore, upon consideration

ORDERED:

-24-

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this _18th_ day of January, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE